# Hunt and Tucker *v.* Booth, Edwards and Hunt.

A *femme covert,* claiming a separate estate, cannot sue her husband by her *trustee.* It is a well settled rule of pleading, that when the wife claims any property in opposition to the marital rights of the husband, she must sue by her next friend.

In the year 1834, one Lytle placed in the possession of Thomas Hunt a lot of slaves, with the understanding that said slaves were to be discharged of all claim on the part of Lytle, if Hunt should pay him the sum of eighteen hundred and six dollars and thirty-four cents at a certain time.' Hunt failed to pay the money as agreed by him. Lytle then conveyed the said slaves, in consideration of the above sum paid him by H. S. Morgan & Co., to one Tucker, in *trust,* to be sold, if necessary, to pay said Morgan & Co. the money so advanced by them to Lytle, as also the further sum of one thousand dollars due from said Hunt to said Morgan & Co.; but if said Hunt paid said Morgan & Co. the several sums of money mentioned, then said Tucker, as trustee, was to convey said slaves to Elizabeth Hunt, (wife of said Thomas Hunt,) *for life,* with a limitation over in favor of her children by name. In March, 1839, Hunt paid said sums of money to Morgan & Co. and obtained their release and discharge of all claims under said deed. In 1839 and '40, Messrs. Booth and Edwards obtained several judgments against Thomas Hunt, and levied on the said slaves as the property of Hunt, to satisfy said judgments. Hunt's wife and her trustee, Tucker, filed a bill to enjoin the sale of said slaves, and claiming the same as their property under the deed of trust. *Held* by the court, that Thomas Hunt's interest in the slaves commenced from the time he paid the money for them, and a resulting trust arose from thence in his favor, which pre-existing creditors, at least, have a right to make available in the payment of their debts, notwithstanding the *form* of the conveyance.

The intention to create a separate estate for the wife must be clearly apparent, in order to exclude the husband from the right to personal property which is given to the wife. The intervention of a trustee has never been held to go the length of vesting a sole and separate use for the wife.

Infants who *take in remainder* should be made parties to a bill relating to the remainder property.

The CHANCELLOR.

The substantive statements of the complainants' bill are, that in 1834 Arch'd Lytle placed in the possession of the defendant,

Hunt and Tucker *v*. Booth, Edwards and Hunt.

Thomas Hunt, a number of his negro slaves, with the understanding that they were to be discharged of all claim, on the part of said Lytle, when Hunt should pay him the sum of eighteen hundred and six dollars and thirty-four cents, being the amount paid by said Lytle for said negroes; that Hunt failed to pay the money according to his agreement; that Lytle, in consideration of the above sum of money being paid to him by H. S. Morgan & Co. conveyed to the complainant, Tucker, the negroes so remaining in Hunt's possession in trust, to be sold, if necessary, to pay said Morgan & Co. the money so advanced by them to Lytle, as also the further sum of about a thousand dollars due from said Hunt to said Morgan & Co.; that if Hunt paid to said Morgan & Co. the said several sums of money, then said Tucker, as trustee, was to convey the said negroes to the complainant, Elizabeth Hunt, (wife of said Thomas Hunt,) for life, with a limitation over in favor of her children by name. The bill states that the possession of the negroes had remained with Mrs. Hunt up to the time of filing the bill; that Thomas Hunt, in March, 1839, paid off said debts mentioned in said deed of trust to said Morgan & Co. and procured their release and discharge of all claim under said deed; that Booth and Edwards, having severally obtained judgments, in 1839 and '40, against said Thomas Hunt, have had executions levied on the negroes so conveyed in said deed of trust.

These judgment creditors of Hunt are made parties defendant, and the bill prays an injunction against the sale of said negroes under said executions. The case was submitted on the general demurrer of the defendant, Edwards.

The first thing which arrested my attention on opening the bill was that it presents the case of a *feme covert* claiming separate property, suing her husband "by her trustee." I am not aware of any rule of practice which would sanction a suit in that form. It is a well settled rule of pleading, that, where the wife claims any property in opposition to the marital rights of the husband, she must sue by her next friend. 2 Ves. sen. 452; Edwards on Parties, 145. But as it is doubtful how far this defect can be noticed under a general demurrer, I proceed to notice what the counsel on either side have considered the main question, which in-

volves the validity of the conveyance, upon which the complainants found their prayer for relief—are the claims, which the complainants attempt to assert under their bill, such as a court of equity will protect and enforce, as against the *bona fide* creditors of Hunt? I think not. I cannot regard the defendant, Hunt, in any other light than as the real purchaser of the negroes, who paid his money for them, and directed the conveyance of title to be made to Tucker, in trust for his wife, for life, with a remainder to his children. When the conveyance is divested of its seniority, it presents the simple case of one party buying property, paying his own money for it, and having the conveyance made to a third person. That this is the true character of the transaction is obvious from the statements in the bill. It is admitted that the negroes came originally to the possession of Hunt from Lytle, under an agreement that Hunt was to pay the money which Lytle had agreed to pay for them, and thus became the purchaser. This purpose was afterwards carried out by the circuitous mode shown by the conveyance mentioned in the complainants' bill. At every stage of the transaction the purpose of making Hunt the open or concealed owner of the negroes, is too palpable to escape observation. Accordingly we find him, in March, 1839, paying off and discharging the money called for by the deed of trust, taking receipts, &c. It was the *mode* only of accomplishing the same thing that was changed.

It appears from the bill that Hunt, at the time of paying the money for the negroes, was indebted to the defendant, Edwards, in the claim upon which the judgment was rendered, which the complainants now seek to enjoin. Hunt's interest in the negroes commenced *at the time* he paid the money for them, and a resulting trust arose from thence in his favor, which pre-existing creditors, at least, have a right to make available in the payment of their debts, notwithstanding the form of the conveyance.

In the case of Brown *et al. v.* McDonald, 1 Hill's C. R. 306, it was held that, where negroes were purchased and paid for by a debtor, and the title made to his sons, a trust resulted to the debtor in favor of his creditors, and that the negroes were liable for his debts.

The case of Doyle *et al. v.* Sleeper *et al.* 1 Dana's Rep. 536, is also a case fully sustaining the same position. I do not, then, think that the complainants present such a case as a court of equity should protect and enforce against the creditors of Hunt, whose claim to have his property subjected to the payment of their debt arose anterior to the claim of the complainants, which, by the terms of the deed, could only have had its commencement from the time of the payment of the money made by the defendant, Hunt. But, apart from this view of the case, I find nothing in the deed, under which the complainants claim, which can justify the relief asked by their bill. The bill can only be sustained upon the idea that the deed of trust creates a separate estate in the negro slaves for the *sole use* of Mrs. Hunt; yet I have sought in vain for any language in the deed which could remotely sustain such a construction. The terms of the conveyance are general and unqualified, using no phrase incompatible with the most perfect dominion over the property by the husband. The intention to create a separate estate for the wife, must be clearly apparent, in order to exclude the husband from the right to personal property which is given to the wife. Palmer *v.* Trevor, 1 Vernon; Chaney's Rights of Married Women; 262.

The mere intervention of a trustee has never been held to go to the length of vesting a sole and separate use for the wife. Lumble *v.* Milnes, 5 Ves. 517.

And in the case of Brown *v.* Clark, 3 Ves. 166, where the interest of a sum of money was bequeathed to the wife for life, and no language being used showing an intention to exclude the husband or to create a separate use to her in the interest, it was held to vest in the husband's assignees.

It is clear, in this case, (even supposing the deed to be valid for any purpose,) that the interest intended to be conveyed to the wife would, upon familiar principles of law, vest in her husband, and leave her without any *interest* which could enable her to maintain a suit in her own name on account of the property.

Mrs. Hunt has not such an interest in the property as to enable her to sue; and this objection goes to the whole bill. 2 Russell, 242, 244.

Hunt and Tucker *v.* Booth, Edwards and Hunt.

But, if the bill were otherwise sustainable, it would be found defective on the score of parties. The children, who take in remainder, should have been made parties complainants. 1 Atkins, 290.

Let the demurrer be sustained, and the bill dismissed as to the defendant Edwards.